Next up we have 226399 Albert Modesto Amaro Luna v. M. Bondi This case resolves straightforwardly under Johnson and the government's forfeiture of any merits argument on the CIMT charge. Nine months ago, this Court got the relevant questions precisely right in Johnson, and the government gives no reason to depart from that reasoning here. The government has conceded overbreadth, and the statute is indivisible. On its face, Section B-1 defines different means of committing the same offense. The identity of the controlled substance is not an element of the crime. None of the government's textual, structural, or unit of prosecution arguments persuaded the Court in Johnson, and they should not persuade the Court here. Apart from Johnson, the Court has rejected the government's argument in two published decisions, Harbin and Stankiewicz, and finding that B-1 is indivisible follows directly from those cases, as Johnson itself recognized. Why isn't Cherry, among our published decisions, why isn't Cherry v. Garland the most on point, right? The statute says you're convicted if it's either a hallucinogenic substance other than marijuana, and that's defined somewhere else, or a narcotic substance, and we said, and which is also defined somewhere, so it's two classes of drugs, and we said A or B is divisible within that description. I mean, here we've got a statute that basically says two categories as well, right? cocaine and sort of isomers and things like that, and heroin. Why isn't that exactly on all fours with Cherry? I forget the specifics of the Cherry statutory regime. I think there were some differences in punishment there, but this is identical, both to Stankiewicz and Harbin, and I think the Court's example in Mathis, in the sense that under B-1, there's a number of different ways of proving the controlled substantive offense. New Jersey state courts have made clear that the relevant sort of what Mathis would have called the locational element is that it is a controlled substances offense, and then it lists out different ways of proving that offense. It says cocaine or its analogs, and then heroin and its analogs and isomers, and so that precise type of list is exactly what the Court said in Stankiewicz, which is a New Jersey statute that has a similar structure with respect to the different controlled substances. But in Stankiewicz, it really wasn't on all fours, right? Because it was the essential element of that crime was you're distributing it where you're distributing it, school zone, right? And the penalty was the same regardless of what substance it was. You never got to the list of substances. It just had to fit within the general umbrella of a controlled substance. The same is true here. Under B-1, a conviction under B-1, the penalty is exactly the same regardless of which substance listed in B-1 is found by the jury beyond a reasonable doubt. The same is true of B-2 and B-3, which are just elevated penalties or just degraded penalties from the B-1 list of substances. So within B-1, which no one disputes as the statute of conviction, it's all over the charging papers, it's all over the conviction papers. Within B-1, it's identical for these purposes to Stankiewicz precisely because there is no variability as to the sentence for crimes convicted under B-1. The same was true in Harbin. And again, I think this just goes back to the way that Mathis talked about that locational element. If you can convict for use of what I think was a deadly weapon there by using a bat or a knife or a gun, it's not – it's indivisible. You don't need to prove that element beyond a reasonable doubt. The government hasn't pointed to any case that shows that under New Jersey law, you need to prove the specific identity of the substance. And Torres and Edwards and Jordan and Rivestineo, to the extent they speak to this issue at all, make very clear that you don't. It's similar to the way this Court has treated 841 under Requeno, where the Court says identity of the controlled substance simply isn't an element. If the government chooses to elevate the punishment, maybe there's something else they need to prove. And I think that's precisely what the Court was doing in Rivestineo, where it says, look, if you want to – oh, sorry, in Jordan, where it said, look, if you want three different sentences, then you need to prove the identity of three different drugs under a B-1 offense. As for the CIMT charge, the government mounts no substantive argument that Luna's conviction qualifies, and it plainly doesn't. New Jersey law is clear that the offensive conviction contains a strict liability element and reaches acts that do not qualify as sufficiently turpitudinous. The government's only real argument is that remand is required. Normally, remand might be the appropriate remedy, but the facts here strongly counsel against it. My client was removed to the Dominican Republic four years ago, and that removal was unlawful and unjust. None of these charges can predicate a removal. His family is here, and he's there in the Dominican Republic. Equity favors dispensing with the need for a remand. This Court has been clear that remand is not required where it would be futile, and the government makes no effort to show that the BIA would do anything other than follow its own precedent here to rule that the CIMT charge cannot predicate removal. I'm happy to answer any further questions the Court has. Thank you, Your Honor. Thank you. Good morning. May it please the Court. My name is Craig Newell, and I'm here on behalf of the government. Mr. Luna's New Jersey conviction for conspiracy to commit a violation of Section 2C355B is a drug trafficking aggravated felony. Mr. Luna's reliance on Johnson, on Stankiewicz, and Harbin is not persuasive for two main reasons. The statutory analysis in Johnson, and it is, relies solely at bottom on the lack of this differing punishments. But that, while differing punishments necessarily means that statutory alternatives are elements, the converse doesn't necessarily lead to a means finding. You need to explore further. So in the Stankiewicz, that New Jersey statute, this Court said it just says, A, controlled substance. And it didn't differentiate between punishments based on the drugs. Here, yes, B-1 requires a violation of A-1, which sets forth the conduct and says, A, controlled dangerous substance. But then in B-1, like the Connecticut statute in Cherry, lists different drugs. It says cocaine or heroin, and then here, and that's why we then need to explore how New Jersey courts interpret their own statute. And this Court should be guided by how the New Jersey courts interpret their statute. So that's where Rivestino comes in. In Rivestino, the Court dismissed a charge where the State aggregated, it aggregated the weight of cocaine and heroin to get the B-1, to get, to try and get a heightened, that heightened penalty provision. And the Court says you can't, you can't do it. And it relied on a statutory interpretation analysis. It said the plain language says, shows that A-1 refers to a singular substance, and that plainly refers to one drug. And then you look down at B-1, and it says heroin or cocaine, and it says that those need to be charged separately. So what Rivestino teaches us is that to get the heightened punishment, you need a particular drug with a particular weight. And so when you have, when you have these facts, then you can implement the heightened penalty. And when you have that situation, you have elements under Apprendi and under Mathis. This is no different than the Federal Statute of 841 that this Court in Requena said that when the Federal Government is trying to impose a heightened penalty, it does need to prove the type of drug. New Jersey is no different. I will also, if there's no questions on the drug divisibility, I will... I do, I do. One of the things I'm puzzling over, and I'm just interested in your input, is we have this Johnson decision. I understand it's not precedential, but we also don't typically think ourselves free to just ignore what we've heard before. And I'm just wondering how, whether there's a distinction in that case or whether your argument depends on us concluding that Johnson got it wrong. Yes, Your Honor. I fully understand. I'm not arguing this case on a blank slate. Johnson is there. It's not controlling. But it's not persuasive in a way to differentiate it, not just say that it's wrong. It's the lack of a consideration of the Rivestino decision, which shows how New Jersey State courts interpret its statute. It did not address Rivestino. It addressed, it provided a set of pure statutory analysis of its own accord basis, and then it disagreed with our reliance on unit of prosecution case law, which this Court disagreed with in Stankiewicz. But this Court can resolve this based on a statutory analysis and Rivestino alone. But wasn't the statutory analysis in, well, no, never mind. I'm still sort of struggling a little bit with how Rivestino, which really focused on the fact that the statute says it's unlawful to possess with intent to distribute a controlled dangerous substance. Why the fact that the getting yourself to the requisite weight has to be one or the other because it says a substance, means that you have to prove one or the other. If you had a world where you had more than five ounces of both, right, the question is whether if half the jury believed, yeah, there was five ounces of coke, but they didn't believe that there was five ounces of heroin, and the other half of the jury believed there was five ounces of heroin. I don't see how Rivestino tells us whether or not that conviction would stand, which I think gets to the question of whether you have an element versus a means. So, Your Honor, if I'm understanding correctly, the situation where the defendant has five, actual five ounces of cocaine and five ounces of heroin in his, in either pocket, you would say, and there's, it's not an aggregation thing. But what Rivestino teaches is that it says that the state needs to charge these two separately. And they do lead to two separate convictions. That's a legal consequence. That's, we're not just talking about brute facts as matters. So the state couldn't choose to charge it as a single charge? No, because what would happen is you would be providing a heightened penalty where a situation where a juror, where the state is throwing up a bunch of evidence and the jury's not really agreeing on it, and you're adding a potential, you're exposing this defendant to a 20-year max. Way above, if you're on the lower level, the B-3, where there's not a heightened penalty, in that situation, there wouldn't be this controversy because the weight is not in dispute. As to the crime involving moral turpitude removal ground, that was not a basis of the Board's decision. It expressly declined to reach that. This is not a situation where remand futility comes into play. The recent decision in Lau v. Bondi is a great example of this. This was a decision that was issued post-Loper-Bright, if you want to factor that into the equation. The petitioner was charged with being inadmissible for committing a crime involving moral turpitude. And the court said, no, in that situation, you can't be considered an applicant for remission and can't be charged under inadmissibility. But it mentioned how there's a separate deportability ground for crimes involving moral turpitude. But it wasn't going to reach out and decide the substantive issue of whether Mr. Lau's conviction was a crime involving moral turpitude. And Mr. Luna has pointed to no opposing precedent that says that this court can reach out and address a wholly separate removal ground. His decisions or his decisions he points to are more situations where the court looked at a different underlying reasoning to get to the ultimate ground. Sometimes in these cases, we invoke the distinction between legal issues that are sort of more squarely within the court's scope versus things that kind of fall within the agency's turf. And overbreadth is one of those ones that we've said, yeah, we don't necessarily need them to do an overbreadth analysis. That's kind of a square legal analysis within our purview. Where do crimes involving moral turpitude, which play into a whole lot of these statutes, are they in the category that the BIA has special expertise for? Are they also legal questions? It has. It's a complicated situation. And the fact that crimes involving moral turpitude, the board has had this expertise in kind of fleshing out the confines. They have set out, oh, in a theft situation, these are what you need to show to make it moral turpitude or et cetera and different when it's fraud or deceit. And so in that realm, but the pure comparison is a legal, is a de novo reviewed as a pure legal question reviewed de novo. I think the differentiation here is between the grounds that were put forward. And so the first thing courts must do is they look at jurisdiction. The second thing they do in looking at agency decisions is find the scope of review. And they are only looking at what the agency said as their final agency action. Then the third question is your standard of review. Whether you're doing it de novo or deferentially. So while the categorical comparison of a state law to the CIMT is de novo, you're not even down at that level yet because we're at scope of review. The decision whether to order someone removed is within the agency and they make that final agency action and then this Court reviews it. So that's why this Court should not reach out and address that issue. Thank you. Thank you, Your Honors. I appreciate it. Appreciate it. Mr. O'Connell. I'm sorry. Thanks very much, Your Honor. I think you heard counsel for the government concede there's no distinction between this case and Johnson. There's nothing relevant in the facts or the law, the statutes of conviction. You know, we address in our briefs the question of whether the conspiracy charge looks through. There's no distinction between the two cases. Rivestineo was fully briefed in Johnson. The government dedicated five pages of analysis to it. We responded in our reply on the same. And the Court concluded sensibly, as I think Your Honor was getting at, it just has nothing to do with the issues in Johnson. Rivestineo says nothing about elements. It says nothing about whether drug identity is required. It was a motion to dismiss where the government indicated that it would proceed on two distinct charges, one as to heroin, one as to cocaine. If it wanted enhanced penalties based on the separateness of those two drugs, it was required to make that showing. I'm imagining if I were in the New Jersey Supreme Court, right, and the issue comes up where somebody is charged under B-1 with a heightened penalty and the proof is mixed as to which substance, and you don't have jury instruction that guarantees you unanimity as to which substance, trying to figure out whether that's a conviction that it would be proper to affirm. I guess in your view, yes, because it's a means, not a— I think it would be, and I don't think that's out of the ordinary. I think that's what this Court said in McKinney with respect to 841, and I think that's consistent with other New Jersey case law. It's also not what Rivestineo addresses. And I think it's worth noting that the appellate division in Rivestineo says in 30 years of this statute being on the books in New Jersey, no prosecutor has ever tried this. And then they drop a footnote, and they say in the experienced trial judge, and they quote her saying, no one's ever tried this before. So to read Rivestineo as standing for some blockbuster principle of New Jersey law as to something as basic as what's required under their ordinary drug statute, I think reads it far too broadly. With respect to the CIMT charge, just a few observations. The first one is there's no jurisdictional question here. Under 1252, it's not a jurisdictional statute. It's a claim processing rule as the Supreme Court concluded recently. So there's no impediment to this Court addressing the question in the first place. With respect to remand and futility, I think the question is, what good will it do to remand this to the board? You didn't hear anything from the government about different arguments they would make or that the board would reach a different conclusion under Silva-Trevino as to whether the statute satisfies. With respect to Lau and the other cases they point to, in Lau, the government never made the argument below that it could predicate removal on the charge that was unaddressed. It was a hypothetical that the government had spun out. All of these issues were argued before the board. The board just chose not to address them because of its conclusion with respect to the controlled substantive offense. There is nothing good or useful to come of a remand to the board. We know the outcome there. It's just more delay for someone who's been removed from the country unlawfully and is living apart from his family. Thank you. Thanks very much, Your Honor. We appreciate both your arguments. We will take this under advisement. We appreciate it.